**Velma C. VANNOY, Plaintiff,**

**v.**

**OCSEA LOCAL 11, Defendant.**

**No. 97–CV–817.**

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 23, 1999.

Robert Francis Barnes, Jr., Rack, Vale, Burke, Fitzgerald, Burns & Balash, Cincinnati, OH, for plaintiff.

James Scott Mowery, Jr,m Mowery and Youell, Worthington, OH, for defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff Velma Vannoy brings this action alleging violations of her rights under the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 623. For the reasons stated below, Defendant's Motion for Summary Judgment is hereby **GRANTED**.

### I.

Plaintiff was born on April 3, 1934. During the period relevant to this action, Plaintiff was 62 years of age. Plaintiff was employed as a staff employee at Defendant OSCEA Local AFSCME AFL–CIO Company (also referred to as "Union"), a bargaining agent for public employees. Plaintiff began her career with Defendant on February 6, 1986, as a Regional Director, responsible for coaching, training and directing staff on a regional basis. In December of 1994, the Regional Director position was abolished and the Division Director position was created. The responsibilities of the Division Director were the same as the abolished Regional Director position but focused efforts along agency lines rather than regional or geographic lines. Plaintiff and two others were reassigned to the Division Director position. As Division Director, Plaintiff supervised a staff of approximately eight to ten individuals and worked in Fairlawn, Ohio.

In April of 1996, pursuant to Defendant's "Strategic Plan," a plan of corporate reorganization, the Union abolished the Division Director position and created an "Operations Director" position. The Operations Director is responsible for managing all aspects of Union activities within respective agency groupings and is based in Columbus, Ohio. The Union appointed Four Operations Directors: Don Conley, age 49, Bruce Wyngaard, age 44, Carol Bowshier, age 38, and Gerald Burlingame, age 53.

Plaintiff was reassigned to the newly created Membership Services Manager position. In this position Plaintiff was responsible for implementing a system for managing membership requests for information and materials. Her duties primarily consisted of answering telephone inquires concerning membership services. Plaintiff did not suffer a reduction in pay or benefits as a result of her reassignment to the Membership Services Manager position. The Membership Services Manager position was based in Columbus, Ohio, and required a minimum 40 hour work week, not including commute time. Plaintiff was offered but refused an "enhanced" relocation package.[1]

From the beginning of Plaintiff's tenure as Membership Services Manager, there were problems. Plaintiff was not satisfied with her new position and viewed her reassignment as a demotion. As Membership Services Manager, Plaintiff supervised only one individual, as opposed to the eight to ten individuals whom she had previously supervised. Plaintiff believed that her new department was understaffed and needed new equipment and facilities. She was also unhappy with the daily commute to Columbus.[2]

---

1. The relocation package was offered at the discretion of the Defendant and could be withdrawn or canceled at any time without any right of appeal or recourse. There is no indication in the record that Plaintiff's refusal of the relocation package was premised on the contingency language contained in the package.

2. Plaintiff lives in Akron, Ohio.

Plaintiff suspected that her new position might have been created to take away her job responsibilities and prestige. On two separate occasions before the Strategic Plan took effect, Plaintiff had negative exchanges with other employees of Defendant. In one instance, less than four months before Plaintiff's reassignment, Don Conley, Plaintiff's supervisor, inquired about Plaintiff's plans for retirement. On another occasion, Plaintiff had a conversation with Paul Goldberg, Defendant's Executive Director, in which he informed her that Bill Pye, Plaintiff's performance evaluator, had brought about the retirement or resignation of fifty-percent of his former staff in Minnesota.

On the other hand, Defendant was not satisfied with Plaintiff's failure to complete assigned projects and lack of progress in developing new techniques for distributing membership services information. Defendant also noted Plaintiff's failure to work full, 40 hour work weeks and habit of playing card games when assignments were not completed. Because of these problems, Defendant issued Plaintiff two written reprimands. Subsequently, on December 1, 1996, Plaintiff retired.

On July 17, 1997, Plaintiff filed this Complaint alleging age discrimination arising from her employment with Defendant. Plaintiff contends that her reassignment to the Membership Services Manager position was a demotion and, because of her age, Defendant systematically forced her into retirement. Plaintiff maintains that she suffered substantial humiliation and embarrassment from her perceived loss of status, which ultimately precipitated her retirement.

## II.

FED. R. CIV. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

### A.

In order to establish a traditional *prima facie* case of age discrimination under the ADEA a plaintiff must present evidence that: (1) he or she was a member of the protected class, *i.e.,* over 40 years of age; (2) he or she suffered an adverse employment action or disposition; (3) he or she was qualified for the position either lost or not gained; and (4) a person younger than the plaintiff replaced, or was selected, over the plaintiff.[3] *See*

---

**3.** There is no longer a requirement that the individual selected for the position be outside of the protected class, *i.e.,* younger than 40 years old. *See O'Connor v. Consolidated Coin Caterers Corp.,*

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir. 1994). A plaintiff establishes a *prima facie* case of age discrimination when he or she presents evidence "which when viewed in a light most favorable to the plaintiff, would permit a reasonable jury to find that he [or she] was discharged because of age." *Russell v. Teledyne Ohio Steel,* 892 F.2d 1044 (6th Cir.1990) (*citing Rose v. National Cash Register Corp.,* 703 F.2d 225, 227 (6th Cir. 1983)).

If the plaintiff successfully proves a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's discharge [or adverse employment action]." *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 379 (6th Cir.1993) (*citing McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If the employer carries this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *See Ang v. Procter & Gamble Co.,* 932 F.2d 540, 548 (6th Cir.1991) (*quoting Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible. *See Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

### B.

■ When an alleged adverse employment action is a result of a work force reduction, a modified *McDonnell Douglas* analysis applies. *See Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990). In *Barnes v. GenCorp Inc.,* 896 F.2d 1457 (6th Cir.1990), the Sixth Circuit explained that:

A *work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within a company.* An employee is

not eliminated as part of work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

896 F.2d at 1465 (*italics added*). Thus, a defendant need not demonstrate economic necessity to establish that a work force reduction has occurred. *See id.; see also Anderson v. Premier Industrial Corp.,* 62 F.3d 1417 (6th Cir.1995).

■ A plaintiff in a work force reduction action must meet a higher standard than a traditional age discrimination plaintiff to establish a *prima facie* case of age discrimination under the ADEA. *See Barnes,* 896 F.2d at 1466; *Godfredson v. Hess & Clark, Inc.,* 996 F.Supp. 730, 735 (N.D.Ohio 1998). To establish a *prima facie* case of age discrimination where a work force reduction has occurred, the plaintiff must establish the first three prongs of the traditional *McDonnell Douglas* test, (*i.e.,* (1) he or she was a member of the protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position either lost or not gained) plus "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for ... impermissible reasons." *Id.* A plaintiff cannot rely on the traditional *McDonnell Douglas* burden shifting analysis, alone, to establish a *prima facie* case and survive summary judgment. *See Barnes,* 896 F.2d at 1465. Instead, a plaintiff must show "evidence of actions taken by the employer which, if unexplained, are more likely than not based on considerations of impermissible factors." *Allen v. Diebold, Inc.,* 33 F.3d 674, 678 (6th Cir.1994).

■ In this case, Defendant's reorganization qualifies as a work force reduction. Defendant initiated a reorganization and as a result, Plaintiff's position as Division Di-

517 U.S. 308, 311–12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

rector was abolished. This position was not subsequently filled nor was it given another title. On the contrary, due to Defendant's reorganization, a number of individuals, including Plaintiff, were reassigned to various positions in the Union. Accordingly, because this case is a work force reduction action, it must be considered under a modified *McDonnell Douglas* analysis as set forth in *Barnes*.

### C.

As a threshold consideration, Plaintiff was 62 years old when she retired; she therefore satisfies the first criteria of a *prima facie* case of age discrimination, *i.e.*, she is within the protected class. To satisfy the second criteria of a *prima facie* case of age discrimination, Plaintiff must show that she suffered an adverse employment action based on her age. *See Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 514 (6th Cir.1991) (*citing Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir.1975)). In this case, Plaintiff contends that she suffered an adverse employment action because: (1) Defendant reassigned her to the Membership Services Manager position; (2) Defendant failed to reassign her to the Operations Director position; (3) Defendant forced her into involuntary retirement—constructive discharge; and (4) her working conditions created a hostile work environment.

In the seminal case of *Kocsis v. Multi–Care Mgmt.*, 97 F.3d 876 (6th Cir.1996), the Sixth Circuit articulated its definition of an adverse employment action.[4] There Linda Kocsis, a nurse who had multiple sclerosis, was transferred from her position as nursing supervisor to the position of "unit RN." She claimed that this transfer was an adverse employment action. The Sixth Circuit held otherwise, concluding:

> Kocsis has not suffered a materially adverse employment action. In her new job as unit RN, she enjoyed the same (or a greater) rate of pay and benefits, and her duties were not materially modified. She submitted no evidence that she lost any

prestige in her position because of her working condition or her title change.

*Id.* at 886–87. In reaching this conclusion, the *Kocsis* Court articulated how adverse employment actions should be analyzed. First, plaintiffs must "demonstrate as part of a *prima facie* case a showing of materially adverse conditions imposed by the employer." *Id.* at 887. Second, the Court reaffirmed that "reassignment without salary or work hour changes do not ordinarily constitute adverse employment decisions." *Id.* at 885. Third, the Court explained that the public's perception of the job, or a semantic change in title and a "bruised ego" are not enough to sustain a claim of discrimination, where pay and benefits remain the same. *See id.* (citing *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir.1994)). Finally, the Court discussed other factors to consider in determining whether an employment action was materially adverse, including: " termination of employment, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, and other indices that might be unique to a particular situation." *Id.* at 886 (*quoting Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993).

### 1.

Plaintiff has not established that she suffered an adverse employment action based on her reassignment to the Membership Services Manager position. It is undisputed that Plaintiff was not discharged; she was reassigned to another position with no loss of pay or benefits. This reassignment thus undermines Plaintiff's argument that Defendant's failure to reassign her to an Operations Director position establishes an adverse employment action. In *Barnes*, the Sixth Circuit "clearly established that an employer has no duty under the ADEA to permit an employee to transfer to another position ... when the employee's position is eliminated as part of a work force reduction." *Barnes*, 896 F.2d at 1469. Thus, where a work force reduction has occurred, as long as the employer's employment decisions regarding an employee are not based on impermis-

---

**4.** Although *Kocsis* was an ADA case, the reasoning is applicable to the present ADEA action. ADA cases are instructive with regard to other Title VII cases. *See Kocsis*, 97 F.3d at 885.

sible considerations, the employer is entitled to considerable discretion in making business decisions, such as reassignment. *See id.*

In this case, Plaintiff has not presented evidence indicating that Defendant based its decision to reassign her to the Membership Services Manager position rather than an Operations Director position because of her age. Defendant is entitled to considerable discretion in making such reassignment decisions. As such, Plaintiff has not established an adverse employment action based on her reassignment to the Membership Services Manager position rather than the Operations Director position.

## 2.

Likewise, Plaintiff has not established an adverse employment action based on constructive discharge. Constructive discharge occurs when an employer, "rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Peecook v. Northwestern National Ins.*, 156 F.3d 1231, 1998 WL 476245, at *3 (6th Cir.1998) (*quoting Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983)); *see also Bruhwiler v. Univ. of Tennessee*, 859 F.2d 419, 421 (6th Cir.1988). Constructive discharge is often asserted as the adverse employment action in ADEA claims. *See, e.g., Wilson*, 932 F.2d 510; *Peecook*, 156 F.3d 1231, 1998 WL 476245. The employee's perception of forced resignation is judged objectively without consideration of any undue sensitivities, *i.e.*, whether working conditions would be so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign. *See Henry v. Lennox Indus., Inc.*, 768 F.2d 746, 752 n. 3 (6th Cir.1985); *Yates v. Avco Corp.*, 819 F.2d 630, 636–37 (6th Cir.1987). The impact of the conditions must be reasonably foreseeable by the employer to give rise to a constructive discharge. *See Yates*, 819 F.2d at 637.

In the Sixth Circuit, presenting an employee with legitimate options for continued employment precludes a finding of constructive discharge, even if the offer of employment is for a less prestigious position. *See Yates*, 819 F.2d at 637; *Wilson*, 932 F.2d at 515. Thus, as a general rule, when an employer gives an employee a realistic option of improving his or her situation, and the work environment is not otherwise unreasonably intolerable, the employee cannot claim that he or she was forced to retire. *See Peecook*, 156 F.3d 1231, 1998 WL 476245, at *3. "In determining whether a lateral transfer would be intolerable to a reasonable person, the following non-exhaustive list of factors have been considered: increased distance from home to new position, decrease in salary, grade level or benefits, and changes in job duties and/or responsibilities." *Darnell v. Campbell County Fiscal Court*, 924 F.2d 1057 (6th Cir.1991).

Plaintiff argues that she was forced into retirement as a result of intolerable working conditions, *to wit:* loss of supervisory authority, unpleasant exchanges with superiors, reprimands for performance and attendance, and being expected to report for work in Columbus. The Court does not find these working conditions objectively intolerable.[5] Plaintiff did not suffer a reduction in salary or benefits, and was offered an enhanced relocation package. Moreover, Defendant presented Plaintiff with a legitimate option for continued employment, which she accepted. Such a long-term employment option generally precludes a finding of constructive discharge. *See Wilson*, 932 F.2d at 515. For the foregoing reasons, Plaintiff has not established an adverse employment action based on constructive discharge.

## 3.

Plaintiff maintains that the circumstances surrounding her reassignment and subsequent retirement created a hostile work environment. A hostile work environment claim is cognizable under the ADEA.

---

**5.** Defendant cites *Hall v. Assoc. Doctors Health & Life Ins. Co.*, 991 F.2d 795, 1993 U.S.App. LEXIS 7568 (6th Cir.1993), for the following proposition regarding constructive discharge: "It would be difficult to assert, however, that being passed over for promotion is by itself generally grounds for a reasonable person to resign or something which an employer reasonably should have foreseen would lead the employee to that point." The Court finds this proposition persuasive.

*See Crawford v. Medina General Hospital,* 96 F.3d 830, 834 (6th Cir.1996). The criteria for advancing a *prima facie* case of age discrimination based on a claim of hostile work environment are: (1) the employee must be over 40 years old; (2) the employee must be subjected to harassment—either through words or actions—based on age; (3) the harassment must have the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there must be some basis for liability on the part of the employer. *See id.* at 834–35. An "objectively hostile" standard should be applied when considering age discrimination actions based on hostile work environment claims. *See id.; see also Peecook,* 156 F.3d 1231, 1998 WL 47625, at *2–3. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond the purview of the AEDA." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Faragher v. Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) ("offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"). Thus, personality conflicts, long-past, isolated and innocuous comments or equivocal, amorphous events alone, do not constitute age-based harassment. *See Crabbs v. Copperweld Tubing Prods. Co.,* 114 F.3d 85, 89 (6th Cir.1997); *Peecook,* 156 F.3d 1231, 1998 WL 47625, at *3.

 In this case, Defendant's inquiry into Plaintiff's plans for retirement and single comment regarding forced retirement percentages were isolated instances that do not rise to the level of harassment. Further, the circumstances that Plaintiff allege created a hostile work environment are not objectively hostile. Considerations such as reassignment, relocation, lack of personnel and equipment, are all reasonable repercussions of a corporate reorganization. It is important to note, "[t]he ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations . . . ." *Allen v. Diebold, Inc.,* 33 F.3d 674, 677 (6th Cir.1994). Accordingly, Plaintiff has not presented sufficient evidence to support a hostile work environment claim under the ADEA.

4.

Finally, because this case arises from a reduction in force, the modified *McDonnell Douglas* framework requires Plaintiff to present direct, circumstantial, or statistical evidence which shows that Defendant singled her out for impermissible reasons. *See Barnes,* 896 F.2d at 1465. After reviewing the evidence presented, the Court concludes that Plaintiff has not produced such evidence.

Plaintiff has presented no evidence indicating that Defendant singled her out based on her age as opposed to considerations of corporate reorganization and efficiency. It is undisputed that Defendant initiated a reorganization to modify the focus of the Union from a regional approach to an agency-based approach. The reorganization consisted of the abolishment of certain positions and the creation of others. As a result, several employees were reassigned to various positions, with various responsibilities. Moreover, Defendant outlined its reorganization in its "Strategic Plan" several years before the reorganization was implemented. Plaintiff's contention that Defendant reorganized merely to get rid of her is not reasonable, and she has adduced no evidence to support this contention. The Court finds it highly unlikely that Defendant engaged in reorganization merely as a subterfuge for transferring Plaintiff to another position within the Union. Therefore, Plaintiff has not presented direct, circumstantial, or statistical evidence sufficient to establish a *prima facie* case of age discrimination.

III.

A plaintiff who brings a claim under the ADEA must prove that age was a determining factor in the alleged adverse employment action that the employer took against the employee. *See Wilson,* 932 F.2d at 514 (6th Cir.1991) (*citing Laugesen v. Anaconda Co.,* 510 F.2d 307, 317 (6th Cir.1975)). Plaintiff has not has not established that she suffered

an adverse employment action. Thus, Plaintiff has failed to establish a *prima facie* case of age discrimination under the ADEA. Accordingly, Defendant's Motion for Summary Judgment is hereby **GRANTED**.

 **IT IS SO ORDERED.**